EDITH RUSTON, ROBERT WALLACE, JOHN RAMSAY and JOHN GILLILAND, executors of JOB RUSTON, against THOMAS RUSTON.

[S. C. 2 Dall. 243.]

A will must be judged of by its own words, and not from evidence *alium de.* Devise of four tracts of land to J. his eldest son, *Provided* he pays to the executors 3000*l.* at certain periods, with power to the executors to sell three of the tracts on J's. default ; J. enters therein ; the executors sell two of the tracts, and the third having been mort. gaged by the testator, is sold by process of law : the devisee is liable to pay the difference between the net amount of sales, and the 3000*l* and interest.

And the personal estate of the testator shall not go in ease of the morgaged premises so far as to defeat the specific or ascertained pecuniary legacies, or any part thereof. Aliter of the legacies of the residuum.

Debt. Pleas *nil debet* and payment.

This cause come on to be tried in bank January 8th, 1795, when it was agreed, that a verdict should be given for the plaintiffs for 2096*l.* 13*s.* 4½*d.* without argument, subject to the court's opinion on the will of the testator, and the following facts.

The will of Job Ruston bore date 17th January 1784, and after the usual introduction, run as follows :

"And for the settling my temporal estate, I devise and bequeath in manner following : *Imprimis,* after my just and lawful debts and funeral charges are paid, I bequeath to my wife Edith 300*l.* according to our marriage contract, payable one year after my death ; (with certain specific articles) 200*l.* more, payable in two years and 100*l.* more, payable in three years after my death ; and if not paid at those times, she shall be paid interest ; also a mulatto female slave, &c. Item, I give and bequeath to my son Thomas, (the defendant) all the lands I live upon, containing 425 acres, with my mill, and 44 acres of land with the usual allowance for roads adjoining the land I live upon, and the half of my tract in Penn's manor, being 218 acres and half a quarter of an acre, to him, his heir and assigns, forever : *Provided,* he pays, or causes to be paid to my executors hereinafter named, or to their executors or administrators, the sum of 3000*l.* in manner following, viz: 400*l.* per annum, without interest ; the first payment to be made, if my son Thomas comes to America, in one year after my decease; but if he does not come to America, the first payment shall be made in two years after my decease, but if my son

" Thomas does not pay the first or any of the payments, within three months of the time I have ordered them to be paid ; in that case I do hereby empower my executors hereinafter named, or the majority of them, or the survivors or survivor of them, or if all are dead, their executors or administrators, fully to bargain, sell, alien, and confirm in fee simple, all that 44 acres of land,adjoining my other tract of 425 acres, except so much of said 44 acres as shall contain a road of three perches broad, along the line of Joseph Strawbridges's land, to take in water to my large field adjoining said 44 acres, to any person or persons, their heirs and assigns, forever ; and such sale shall be good and effectual in law against my heirs, to all intents and purposes : and in case my son Thomas fails in paying thesecond, or any other subsequent payments, in that case, I do hereby empower my executors and those within named, to sell 100 acres of land more, being part of my tract of 425 acres, to be laid off(in a certain specified manner:)and if my son Thomas fails in making the fourth,or any subsequent payment, in that case I do empower my executors, and those within named, to sell my 218 acres and half a quarter of an acre,being the remaining half part of the tract that I sold to my son-in-law John Evans Finley, in the same manner that I have willed my 44 acres of land to be done.   And I do hereby empower my executors, and those within named, to comply with my articles of agreement with the said John Evans Finley.   I give to my wife Edith interest for the money I have bequeathed her from one year after my decease, till it is paid. I give to my son John 200l. which shall be in full of his share of my real estate (and certain specific articles.)   I give to my daughter Sarah 5l. which shall be in full of her share of my real estate.   I give to my daughter Louisa 200l. which shall be in full of her share of my real estate, and three mulatto slaves.   I give to my daughter Elizabeth 5l. which shall be in full of her share of my real estate, and three mulatto slaves.   And the remainder of my estate, I do will and bequeath one tenth part thereof to my daughter Sarah, one tenth part thereof to my son Thomas, and the remainder shall be divided in three equal shares, which I give to John Louisa and Elizabeth, to be divided between them, share and share alike.   I give to Thomas Love and James Boyd 100l. to be put to interest, for the support of a minister in the meeting house of Fagg's manor, the said 100l. to be taken out of said remainder of my estate, before any share or dividend shall be made to my sons or daughters.   And I do appoint my wife Edith, Robert Wallace, John Ramsey, and James Gilliland, my executors.   In witness, &c."

The testator died seized of 687⅛ acres of land.

The defendant arrived in America from Europe, on receiving intelligence of his father's death, and entered into possession of the lands devised to him, but paid no part whatever of the 3000*l.* as directed by the will. Whereupon the executors sold the tract of 44 acres, pursuant to their authority; and also the tract of 100 acres upon his second default. The 218⅛ acres tract was under mortgage to the trustees of the Pennsylvania Hospital, executed by the testator in his lifetime, and was afterwards sold by the sheriff on a *levari facias*.

The present suit was brought to recover from the defendant, the difference between the net amount of the three sales, and the 3000*l.* and interest.

The inventory of the testator's personal property amounted to 588*l.* 13*s.* 9*d.* exclusive of the specific personal legacies.

According to the statement of the accounts produced by the executors, if they were at liberty to charge the defendant with the 3000*l.* and interest, and then to pay off the mortgage to the hospital, out of the monies of the estate, there would ensue a deficiency of 260*l.* 15*s.* 6¾*d.* above the amount of assets, on payment of the debts and ascertained pecuniary legacies.

But many of the items of this statement were objected to by the defendant, and the particular balance was not settled at the time of the argument.

The case was argued by Messrs. Ingersoll and F. B. M'Kean for the plaintiffs; and by Messrs. Tilghman and Heatley, for the defendant, in April and September terms, 1795; but the opinion of the court was not given until the present term, under an expectation, that the precise sum due either to or from the executors, would be correctly ascertained which however eventually did not take place.

Two questions arose on the argument; 1st, As the defendant took possession of the four tracts of land devised to him, did he subject himself thereby to the payment of the 3000*l.* or was the remedy of the executors restricted to the three tracts only, as a specific fund? 2d, Ought the defendant, as devisee to pay the mortgage money, or should it come in as a debt due from the testator, payable out of his general assets?

The plaintiffs offered to the court a former will of the testator, which he had revoked, in corroboration of their construction of the will in question; but the court said it could not be received. The present will must be judged of on the face of the written instrument itself, and not from evidence *aliunde.* This point has frequently been determined.

For the plaintiffs, on the first point, it was then said, that it appeared by the will the defendant took the lands devised to him, chargeable with the 3000*l.*, because the testator has devised all his lands to him, and all his personal property to others. Nothing can be collected from the direction of the sale of the three tracts of land by his executors, except that the testator thought that these lands were sufficient to raise the 3000*l.*, and he was mistaken therein. The proviso forms an express condition, on what terms the devisee should take, and must be construed strictly. Words which will not raise a condition in a deed, will proceed that effect in a will. Yet even in a deed, a *proviso* will form a condition; as if one lease for years by indenture, provided that the lessee shall not alien. Co. Lit. §§ 329, 203. *b.* So if on a feoffment rent be reserved to the feoffor, provided if the rent be behind, feoffor or his heirs may enter. *Ib.* 204. *a.* The defendant entered on the lands under the will, and therefore acceded to the the terms prescribed by the testator. 3. *Bro. Cha. Rep.* 165.

But it may be said the proviso is a condition, where there is no other remedy. 1 *Leon.* 174. And that supposing it to be such in the present instance, the heir at law only can enter for the condition broken, which heir the defendant himself is, as eldest son. To this it may be answered, that in Pennsylvania all the children are heirs at law of the father, and the case in England of a devise of land to one daughter, paying a certain sum to her sister, is analogous to that in question

A devise of land in borough English to a second son, he paying 20*l.* to each of the daughters of the testator at twenty one, is a condition and not a limitation. But such a devise to an eldest son, would be a limitation; for if a condition, there would be no remedy against him. Cro. Jac. 56.

Courts of justice are bound to give full operation to all the parts of a will. If it should be considered as a trust in the defendant, they would struggle hard to execute it. If the executors had not pursued their powers, the children would not have been without remedy; for they might have sued the executors, and sold the lands by execution. Money devised to be raised out of the profits of lands, if the profits will not raise the sum in a convenient time, equity will decree a sale. 1 Vern. 256. 2 Vern. 26. 2 Vent. 357. 1 *Equ. Ca. Ab.* 199, pl. 9, 10.

Unless the intention of the testator is clear, to restrict the charge to the three specified tracts, the first charge must necessarily subsist. It is no objection to say, that the party has two remedies. For a devise on condition to pay 5*l.* per annum to B., and if he does not pay, that B. may enter and distrain, is still

a condition, though there is a right of distress. One remedy does not take away another. Benl. 81. Dy. 348. 5 Vin. Ab. 59, pl. 6. 1 Atky. 382.

It is moreover asserted, that this very point was determined here on this will, between the same parties, some years ago, according to the plaintiffs' present construction of it.

On the second point, the rule in equity certainly is, where it may be reasonably inferred that the devisee is to take mortgaged lands, *cum onere*, it shall be so decreed. 1 Cha. Ca. 271. 3 Bac. Ab. 638.

In Pennsylvania, real and personal estate follow the same course of distribution ; and therefore the principle of the English law, as to the personal estate being the natural fund for debts, does not hold in this state. There must be either express words, or a manifest intention, to exempt the personal estate. Bunb. 302, 303. 3 P. Wms. 325. 3 Woodeson 384, 385. No peculiar form of expression is necessary to exonerate it, if the intention be evident. 2 Bro. Cha. Rep. 60.

A devisee of a mortgaged estate, shall have no assistance of the personal estate, if there be no assets to answer the legacies. But if the mortgagee resort to the personal estate, a specific or pecuniary legatee shall stand in his room, for so much of the real estate as the mortgagee has taken out of the personal estate. Forrest. 53. Ambl. 172. Devise of all his goods in such a house to A., and all the rest and residue of his personal estate to his wife, whom he makes sole executrix, passes to his wife all that he had not before particularly devised. 1 Eq. Ca. Ab. 271, ca. 15. 2 Fonbla. 300.

According to the present will, defendant is entitled to one tenth part of the residue, and his sister Sarah to the same proportion ; the remainder is to be divided into three equal shares. Consequently, the defendant's construction would thrown an undue advantage in his own favor.

The defendant's counsel urged. 1. Under the terms of the will, the executors are restricted to the sale of three tracts of land, to raise the 3000*l*. No legacy is devised them.

The proviso would have been an express condition, if the devise had not been to the defendant ; for none but he, as eldest son and heir at law, could enter for the condition broken· Here is no devise over ; otherwise it might have been a limitation. Had there been no express fund, it would have descended on the heir as a trust, by necessity.

The case in 1 Leon. 174, pl. 242, shows that a proviso is a

condition, there being no other remedy, and is in point. S. C. 8 Vin. Ab. 332, pl. 7. Co. Lit. 236. b.

Lands devised to the heir, paying &c., it is no condition ; but it will raise a trust in the heir, and affect a purchaser with notice. 2 Freem. 278, pl. 148.

Devise to one not an heir, paying &c., is a condition, not a limitation. 1 Vez. 47. Where there is a devise over, it is a limitation. 1 Atky. 383.

The heir at law, may take advantage of a condition annexed to real estate, though not named. 1 Vez. 46. He only shall enter for the condition broken. 1 Atky. 383. 2 Freem. 278.

Where there is an express fund, and no necessity exists, a trust shall not be raised by implication. Here is no personal charge against the defendant, but the remedy of the parties is confined to the land. The testator has not charged the fourth tract. Why if the 3000*l.* was to be raised at all events, did he not vest his executors with the authority of selling that also ? He certainly intended that the defendant should have his lands. He was mistaken in his calculations, as to raising 3000*l.* out of the three tracts, and this is no uncommon case. He must have intended a bounty to his eldest son, and that under all circumstances, he should be entitled to the fourth tract. If his intentions are inconsistent, the last intention shall prevail : his subsequent expressions must control the preceding words. Terms of implication will not destroy an express estate given by will. 1 P. Wms. 605. Wills must be construed according to the intention of the testator, if it be not contrary to, or inconsistent with the rules of law. 2 Burr 1100, 1111. So was the case of lessee of Rowland Evans v. James Davis, determined in this court, January term 1794.

Though it is admitted, the present point was heretofore determined on this will, as the plaintiffs now contend, yet the same objections were not then taken, as are now offered. The executors have made their election. The court will not now afford them a remedy, different from their own choice. 

2. There is no doubt, that mortgaged lands are liable to the payment of the mortgage money ; but the personal estate is also subjected thereto, in the common course of administration, unless it would defeat specific legacies. The personal estate of a testator is liable to pay a mortgage. It is a debt, though there be no covenant, or bond. 3 P. Wms. 358, 1 Wms. 294. Real assets descending on the heir, shall go in aid of a specific devisee of mortgaged lands. 3 Atky. 430.

The devisee of real estate shall have the aid of the personal estate, to discharge the lands of incumbrances. 1 Vern. 36. The devisees of

mortgaged lands take *cum onere*, where to take otherwise would defeat other legatees. 1 Wms. 694.

If the 3000*l.* has been paid by the defendant, it ought to have been applied to the payment of debts in the first instance of which the mortgage is one. Should the court be of opinion with the plaintiffs on the first point, the defendant should be credited with the amount of the sales of the three tracts, and only be charged with the deficiency. The mortgage money ought to be paid out of the assets of the testator, and if a loss should eventually follow, the defendant will share his part of it with the other residuary legatees.

The court delivered their opinions *seriatim*.

M'Kean C. J. minutely stated the will and case at large, and then proceeded thus :

In case of an intestacy, the rule of law is clear, that simple contract debts, bonds, mortgages and specialties of every sort, must be paid by the administrators out of the personal estate, this being the natural fund for debts, though the younger children should be thereby left destitute ; but where there is a will, the testator can substitute other funds in the place of the personal estate. What has Job Ruston willed in this particular ? is the question.

The intention of the testator shall govern in the construction of a will in all cases, except where the rule of law overrules the intention, and this is reducible to four instances. 1. Where the devise would make a perpetuity. 2. Where it would put the freehold in abeyance. 3. Where chattels are limited as inheritances. And 4. Where a fee is limited on a fee. Sel. Ca. in Cha. 31. And this intention must be collected from the whole of the will, or writing itself. 3 Burr. 1541, 1581, 1662. 2 Burr. 771, 1106. 1 Vez. 231, and many other books.

What then was the intention of the testator, as expressed in his will ? The value of the real estate devised to the defendant, the *quantum* of his debts, and the amount of his personal estate at his death, would give considerable light in this matter. These have not been satisfactorily ascertained to us. However, we have been told that the debts, specific and pecuniary legacies, with the charges of administration, will amount to 3849*l.* 9*s.* 3¾*d.*, and that the personal estate only produced 588*l.* 13*s.* 9*d.* so that if the defendant had paid the 3000*l.* there would have been a deficiency of 260*l.* 15*s.* 6¾*d.* and nothing left for the residuary legatees.

The counsel for the defendant insist that he shall hold the remainder of the real estate unsold, exempt from the payment not only of the legacies, but also of the debts, unless the personal estate and the produce of the lands shall prove insufficient for the discharge of the debts; because, they say the 3000*l.* was no legacy to the executors; it was no charge on the lands, for they were all devised to the heirs at law; it was no condition, there being no remedy in case of failure; and it was no limitation, there being no devise over.

The defendant took possession of the lands so devised to him. This evidences his assent to pay the 3000*l.*; and the intention of the testator that he should pay it to the executors, is too plain to bear an argument. What rule of law or reason is there to prevent the executors from recovering it? Suppose the devise to the defendant had been subject to the payment of his debts, instead of a certain sum of money, viz. 3000*l.*, as in this case, the lands would be assets at law. The testator has subjected the gift to the payment of this sum, and it must pass *cum onere.*

I therefore consider the 3000*l.* as an equitable if not a legal charge, or as a trust and condition, which affects and binds the real estate devised to Thomas Ruston, the eldest son, and which it was the manifest intention of the testator he should pay at all events. The defendant could not be considered in this case as heir at law in Pennsylvania, where, if at that time a person had died intestate, leaving divers children, his real estate would have descended to all his children equally, the eldest son having only a double portion or share, and therefore the devise may even be considered as a condition. Forrest. 271. 1 Atky. 383. 3 Wms. 325. The same judgment was given by all the then justices of the Supreme Court, above five years ago, between the same parties, on a case stated on this very point, which I deem conclusive.

But the second question, respecting the payment of the mortgage on the 218⅓ acres, is new.

It appears to have been the intention of testator, that the legacies, specific and pecuniary, should be paid, as well as that the devise of the real estate should take effect; and, if practicable, the assets should be so marshalled, that the testator's intention in the whole should be carried into execution. The testator seems to have thought the 300*l.* would have been sufficient to have discharged all his debts, and also the particular pecuniary legacies, (by which I mean those given to his widow and children in full of their respective shares of his real estate,) but in this he has been mistaken.

A mortgage is a debt; it arises on a loan, and there is usually

a convenant to pay the money; it is a specialty debt. Thomas Ruston is *hœres factus* of the whole real estate, on his payment of 3000*l*., and if that sum had been more than sufficient to pay off all the particular pecuniary legacies, I would be of opinion that the mortgage should be paid out of the residue of that sum, as much as any other debt, and that he should not take the estate with this additional incumbrance. It appears no where in the will that the testator meant the defendant should take the lands with this lien upon them.

It is the constant practice in chancery, to allow to children the same favor as creditors. Forrest. 275. I therefore think that the specific and particular pecuniary legacies, bequeathed to the children, ought not to be brought in ease of the particular lands mortgaged; but it seems to me that the devise of the residuary part of the personal estate should give way to the devise of the real estate subjected to the mortgage, and be applied as far as it will go in discharge of the mortgage. For the devisee of the real estate must take it *cum onere*, that is, subject to the mortgage, unless the residue of the personal estate will be sufficient to discharge it. Vid. Gilb. Equ. Rep. 72. Forrest, 202. 2 Atky. 230. 1 P. Wms. 694, 730. Prec. Cha. 578.

Shippen, J. The first point has already been determined in this court, and I concur in that resolution.

On the second point I am of opinion, that the personal estate should not go in ease of the mortgaged premises, so far as to interfere with, or defeat the specific or pecuniary ascertained legacies; but on a fair examination of the authorities, I think the residuary legatees are not entitled to the same advantage.

Yeates, J. On the first point, it was clearly the intention of the testator, that the 3000*l*. should be raised at all events. The defendant accedes to his father's terms, and submits to the monied charge by his entry on the lands devised to him. 3. Bro. Cha. Rep. 165.

But it is objected, that the proviso in the will does not form such a condition, as will warrant an entry on its breach, the defendant being the eldest son and heir at law under English ideas.

Independent of the local circumstances of the state, and the just equality which our whole system of legislative and judicial polity holds out to all the issue of one common father, and which therefore is materially distinguished from the English code, giving a preference to the eldest son, it may be answered, that in such a devise to the heir at law, the courts of Westminster Hall would construe that proviso as a

limitation, in order to effectuate the intention of the testator, their being no other remedy. Cro. Jac. 56. 1 Leon. 174, pl. 242. But the point has already been resolved in this court.

On the second question, the result of the cases in the books appears to be, that the personal estate of a testator shall in all circumstances, be first applied in discharge of his personal debt, or general legacy, unless he by express words or manifest intention exempts it. 2 Atky. 625. 3 Atky. 202. 3 Wms. 324. 1 Bro. Parl. Cas. 192. Bunb. 302. 1 Bro. Cha. Rep. 144, 454. See 2 Wms. 664. Cox's Note (1.) Forrest. 274.

So it is, although such personal debt be also secured by a mortgage as in 1 Wms. 291. 2 Salk. 449. 1 Vern. 36. 3 Wms. 360. 2 Atky. 436. 1 Vez. 251. 6 Bro. Parl. Cas. 520.

But the application of personal estate in case of the real estate mortgaged, does not take place to the defeating of any legacy, either specific or pecuniary. 2 Wms. 190, 335. 1 Wms. 693, 680 (Cox's Note) 730. Forrest 53.

Yet it is otherwise as to residuary legatees. 2 Wms. 335. 2 Vern. 477. And in the late case of Hamilton v. Worlsy et uxor (4 Bro. Cha. Rep. 204.) Lord Chancellor Loughborough says, " The ground of the plaintiff's claim is founded on " the equity of this court, which enables a devisee to have an incumbrance upon the estate discharged as a debt payable out of the personal estate. The extent of that debt can never go further, than as against the heir, the devisee and the residuary legatee. It cannot interfere with any other creditors specific or pecuniary legatees. No other creditors are affected by it ; for this court can never mean to extend this principle of equity farther, than as between those parties." It is not pretended, that there are express words exempting the personal estate from payment of the mortgage. And the only remaining question to be considered, is, whether on a fair construction of the whole will, such intention can clearly be collected, or inferred from all its parts ?

Taking the mere words of the will, independent of the events, I cannot discover such intention. But from the statement furnished by the plaintiff's counsel to the court, it appears, that excluding the mortgage as a burthen on the land devised to the defendant, there would be a deficiency of 260l. 15s. 6¾d. to pay the pecuniary legacies particularly ascertained, and also the unascertained *residuum* which the testator contemplates in his will. Exceptions however, have been filed against this statement, which will require examination, before the present question can be finally settled.

In the language of Lord Thurlow, " Whether the personal

estate should be liable in the first instance in exoneration of the real estate to the payment of the debts, in wills of this kind, upon looking into the cases, I find to be a point so slender and fine, that I cannot collect any certainty upon the question, but so much uncertainty abounds, that could the will of a testator be referred to a number of lawyers, they would probably entertain a diversity of opinions upon it." 1 Bro. Cha. Rep. 462. In Stapleton v. Colville (Forrest. 208) Lord Talbot observed, much might arise from the examination, as to the quantum of the debts, and the amount of the personal estate ; and therefore he took it to be clear, that such an examination might be gone into.    So in Bampfield v. Wyndham, Prec. Cha. 101, and several other cases.    Nor do I see, how the rule, " that a specific or pecuniary legacy shall not be defeated, by an application of the personal assets in case of the real estate mortgaged" can possibly take place, unless a consideration is had of these particulars.    The events, as they arise, must govern the application of the rule.

It is true, that in Stepenson v. Heathcote, (as cited in 1 Bro. Cha. Rep. 466, 467,) Lord Keeper Henley is made to say, that the intent of the testator in this particular, is to be collected from the words of the will, and from no circumstances out of it ; and Lord Thurlow seems to adopt the same idea in 1 Bro. Cha. Rep. 462.

But for the reasons, I have already given, I consider myself at liberty to form my judgment, on these extrinsic circumstances ; and if it should hereafter appear, that the ascertained pecuniary legacies would be disappointed by the construction contended for by the defendant, as to any part thereof, I am of opinion, that the deficiency of of property to pay those legacies should be made up by the devisee of the mortgaged premises ; and that as to so much of the encumbrance, the personal assets should not be considered as a fund for payment, in ease of the real estate.    But the rule not holding as to the residuary legatees, I think this court can give them no relief.

This construction upon the best consideration which I have been able to give the case, appears to me the most effectual for carrying the general intent of the testator into full execution, as far as it can be done, consistently with the adjudged cases.    I could have wished to have found some case, wherein the rule in equity, as to the personal estate of a testator going in discharge of his personal debt or general legacy, has in the same will obtained in part, and been refused in part, *pro tanto* ; but my searches on this subject, have proved fruitless, and I have therefore been constrained to take up the point before us on principle.

Smith, J. As the court have already declared their unanimous opinion, that the premises being devised to Thomas Ruston, provided he pays to the executors 3000*l.* in the manner prescribed by the will, he is bound, having taken possession of the land, to pay that sum, I will not enter into the consideration of that plain point, but proceed to

Question 2d. No case in point has been cited, nor have I been able to find any, in the course of much research, in which it has been determined, whether where mortgaged land has been devised to a son, he paying a certain sum of money amounting to more than four times the mortgage, he takes the land, subject to the mortgage money besides; or whether the personal estate of the testator shall be applied to pay the mortgage, where pecuniary legacies bequeathed to the rest of his children would be thereby defeated in part and the residuary part entirely defeated; although the testator must have had in contemplation at the time of making the will, that the residuary part would be considerable, as he directed that it should be divided into so many shares; the devisee of the mortgaged land being also one of the residuary legatees.

It therefore becomes necessary to select and state such general principles and adjudged cases, as are most applicable to the case before us, which may give us some assistance in forming a right judgment of it.

I must however say, with Lord Chief Justice Wilmot, "that cases in the books upon wills, have no great weight with me, unless they are exactly in the very point;" (2 Wils. 324,) and all cases depending upon the intention of the testator, (which is the pole star for the direction of devises,) are best determined, upon comparing all the parts of the devise itself, without looking into a multitude of other cases." 2 Burr. 1112. 3 Wils. 142. 2 Atky. 374. 3 Bl. Com. 382.

However, in the construction of wills, adjudged cases may very properly be argued from, when they established general rules of construction, to find out the intention of the testator. 1 Burr. 233

1. Now it is a general rule, that the personal estate shall be first applied in the payment of debts and legacies, unless there be express words, or a plain intention of the testator to exempt it, or to give the personal estate as a specific legacy. 2 Atky. 625, 424. 1 Wils. 24. Pow. on Mortg. 374, 393. 1 Vez. 51. 3 Atky. 202. 1 Bro. Parl. Cas. 192. 2 Eq. Ca. Ab. 493. Bumb. 302. 1 Bro. Cha. Rep. 459 to 467, where all the authorities, which apply either in affirmance or denial of the doctrine, are thoroughly considered. Forrest. 53, (in note.) It is not sufficient that testator charge

the real, but he must show that his purpose is, that the personal shall not be applied. 1 Bro. Cha. Rep. 145, 462. 2 Vern. 568.

2. It is the general doctrine of the Court of Chancery, that the *hœres factus* shall have the same benefit of the personal estate, in discharge of the real, as the *hœres natus*. Forrest. 55, 274. Prec. Cha. 2, 3. 3 Bac. 638. Powel on Mortg. 370. 2 Fonbl. 196.

It was a long time before a devisee could prevail with chancery, to have the personal estate applied in exoneration of the real, as appears from many ancient cases, which distinguish in that case between a devisee and an heir at law, though at last the devisee has prevailed, where no damage is done to a third person. Forrest. 54. Pow. on Mortg. 377, 379. Cornish *v.* Mew, 1 Cha. Ca. 271, is the last where the court refused to do it. The first case in which it was determined in favor of a devisee of part of the real estate only, was 2 Cha. Ca. 84. 1 Vern. 36. And this opinion of that great man, Lord Nottingham, has been followed ever since. 2 Atky. 436. 1 Equ. Ca. Ab. 270.

Thus the court has gone as far as is reasonable, viz. to put the *hœres factus* in as good a plight as the *hœres natus*, but not in a better. Forrest. 55, (note.) Powel on Mortg. 379.

It is said, by the accurate Mr. Cox in his note on 1 Wms. 680. that the application of the personal assets in ease of the real estate mortgaged, does not take place to the defeating of any legacy. To support this position, he cites Oneal *v.* Maed, 1 Wms. 693. Tipping *v.* Tipping, *Ib.* 730. Davis *v.* Gardner, 2 Wms. 190; and Rider *v.* Wager. *Ib.* 335. I will examine each of these cases.

Oneal *v.* Mead, (also reported 2 Equ. Ca. Ab. 556, pl. 19,) does not apply to the question before the court, nor is the case accurately stated.

In Tipping *v.* Tipping, the Lord Chancellor denied it to be a rule in all cases, that the personal shall be applied in ease of the real estate, for it shall not be so applied, if thereby the payment of any legacy will be prevented, much less where it will deprive the widow of her *bona paraphernalia*. S. C. 2 Equ. Ca. Ab. 499, pl. 20.

If the personal estate here had gone in ease of the real estate, it would have deprived the widow of her *bona paraphernalia*, and the point adjudged goes no further.

On this occasion I must be permitted to say, with the cautious and accurate Judge Foster, (Crown Law, 313,) that "general rules thrown out in argument, and carried further than the

true state of the case then in judgment requireth, have, I confess, no great weight with me." And with Vaughan, pa. 382, that " an opinion given in court, if not necessary to the judgment given of record, but that it might have been as well given, if no such, or a contrary opinion had been broached, is no judicial opinion, nor more than a *gratis dictum*.

In Davis *v.* Gardiner, the reporter at the end of the case subjoins, if the testator had owed a debt, for which his real and leasehold estates were mortgaged, equity would have charged all this debt on the real estate, in order to have enlarged the fund for the pay ment of the legacies, as well as debts. S. C. 2 Equ. Ca. Ab. 499 p.1 '24, note.

My observations on the former case apply hereto. It is also to be considered, that the court-decreed, that the real estate was not liable; and that the personal estate was not sufficient to pay all the legacies to the daughters, but was enough to pay much the greatest part of them. In one respect the case is similar to that now before us. In each, the testator was in all probability mistaken in the value of his personal property.

In the close of Rider *v.* Wager, it is said to have been admitted by the counsel on both sides, that the land having been made by the testator himself a fund for the payment of the mortgage money, though the same should be eased against an administrator or residuary legatee, yet it should not be eased so as to disappoint any of the debts, or even legacies given by the will, either specific or pecuniary.

In the case before us, the land was not made a fund for the payment of the mortgage money, but was devised to the defendant, he paying 3000*l.*; which sum was more than four times the mortgage money, and added to the inventory, was sufficient to pay all the debts, all the specific legacies, and more than three fourths parts of the pecuniary legacies.

We find that land has been eased by the application of the personal estate, as against residuary legatees, Bung. 302. 2 Vern. 477. Powell on Mortg. 391, which it seems it would not be against legatees for certain sums. Ambl. 129. 4 Bro. Cha. Rep. 204.

3. The personal estate shall be applied in exoneration of the real estate, where no damages is done to a third person, Forrest 54, where there is no prejudice either to a simple contract creditor or legatee. Ib. Pow. Mort. 377. 2 Fonbla. 299. But though a man mortgages land, and covenants to pay the money, and dies, the personal estate shall in favor of the heir be applied to exonerate the mortgage. So if there be no covenant, if the mortgagor had the money, because it was his debt and he was bound to make it good,

though the land proved an insufficient security. But it is to be understood, that this exoneration shall not be allowed, unless there be personal assets sufficient to pay all legacies; for the mortgage shall be paid out of the land, if there be not personal assets to pay all the legacies; and if by such payment assets fall short, the legatees may make the mortgagee refund. Salk. 449. 14. Fin. 285.

Legatee has a right to stand in the place of the mortgagee, to have satisfaction out of the real estate for what the mortgage shall exhaust of the personal. Ambl. 174. See 2 Cha. Ca. 4, 5. Forrest. 53, 54. Pow on Mortga. 377, 378.   2 Fonbla. 299, 300.

In one Bro. Cha. Rep. 454 to 467, the material cases upon this subject are recognized, and the circumstances which governed the decision of each are thoroughly considered.

The remark of Lord Chancellor Thurlow, (Ib. 462,) how much uncertainty abounds in wills of this kind, has been already quoted from the bench.

In the decision of such cases, the court seems to have adopted for the ground of its determination, the distinguishing circumstances of each, without any direct reference to any general principle, as applicable to them all.   Forrest, 211. William's note.

The greatest judges have differed on this subject, and have even changed their own opinions.   In 2 Atky. 439, Pow. Morga. 394, Lord Hardwicke was at first of opinion, that real estate descended was not liable to discharge a mortgage on a real estate devised, but afterwards altered his opinion on the particular circumstances of the case.   In 1 Bro. Cha. Rep. 467, Lord Thurlow differed from Ashurst and Hotham, commissioners; and Lord Macclesfield and Lord Bathurst differed on the same point.

Upon the whole, therefore, it does not appear that there is any case the same in the point adjudged as the present; and there being no well considered solemn decision, the court may resort to principles. Doug. 443. Pow. on Mortga. 91.

From a careful review of all the cases on this head, these general conclusions seem fairly to be inferred.   Where mortgaged lands are devised to one (especially to one of the testators children,) and specified pecuniary legacies are bequeathed in the same will to others, (especially his other children,) if the application of the personal estate to the payment of the mortgage money, would defeat these pecuniary legacies in the whole, or in part, it shall not be applied, but the devisee shall so far take the mortgaged land *cum onere*.

But as against an administrator, executor or residuary legatees,

the devisees shall hold the mortgaged lands exonerated out of the personal estate, if that be sufficient after payment of debt and ascertained pecuniary legacies.

Should it be said, that the first inference contradicts the general rule, that every devise of land is specific, and that a specific devise is never broken in upon to make good a pecuniary legacy; I answer, that, should unincumbered lands be devised to one, and certain specified pecuniary legacies be bequeathed to others, charged on other lands, or out of the personal estate, or out of both, and these other lands or personal estate, or both should prove deficient, that deficiency shall not be made up out of the land so devised. And I conceive that this is the meaning of the rule, and that it goes no further.

The conclusions which I have drawn, are fortified by the following observations.

The exoneration in favor of the heir arose from the heir being originally considered in the seat of the ancestor, and while the ancient tenures subsisted he was obliged to perform the services. 2 Atky. 435. But this reason for exonerating the heir does not hold in this state. Where an ancestor leaves more children than one, the term heir-at-law conveys no idea with us; they are all his co-heirs. All are equally entitled, if he dies intestate, except that the eldest son has the first offer of the land if it cannot be divided; and that (at the time this will was made,) he was entitled to two shares; and it must be presumed, and they all are equally objects of the father's bounty, where he does not expressly and clearly give a preference, or lay a burthen on his bounty to some, in order to exonerate others of them from a charge to which the estate devised to these last would be liable, unless thus exonerated. With us, such exoneration is not to be presumed.

I shall at all times pay a due regard to the laws, and the decisions of the courts of justice of that country from which we derive our jurisprudence, where they are applicable to this country. The better we are acquainted with them, the more firmly shall we be convinced that they contain the utmost exertions of human wisdom on the subject matter; but at the same time, I must be permitted to own, that I do not feel my mind fettered by them in instances wherein they do not apply, but are repugnant to the spirit of our constitution. Instances indeed there may be, in which by our general practice, (and in all cases where there have been solemn decisions,) those laws have become the land marks of property: and in such cases a judge is bound by them, although he would not in the first instance have adjudged them applicable to us.

The preference given to the heir at law, (and I have already shown that the devisee cannot be in a better situation than the heir,) by the laws of England, has not amongst us become a rule of property, further than I have mentioned. It is therefore incumbent on us, to decide according to the genius of our own laws and constitution, in the case before us.

In this state, the real and personal estates descend through the same channels; in England, they divide at the death of the ancestor, and go through different channels. This forms a strong presumption against exonerating the heir or devisee of the real estate at the expense of those to whom pecuniary legacies are bequeathed, because it is a general observation, that men in making their wills are very much influenced by the laws of the country wherein they live, respecting the descent of intestate's estates, and therefore, in the construction of wills doubtful in this point, judges ought to have those laws constantly in view.

If these conclusions and observations be just, the application of them to the case in question is easy. The defendant is liable; he takes the land with the incumbrance. But to what extent? Not surely to the amount of the whole debt, interest and costs, recovered on the mortgage, if a total exoneration of the mortgaged land devised to him, by the personal estate, would not leave a deficiency of much more than one third of the mortgage money, to pay all the pecuniary legacies.

He is liable to make up that deficiency, with interest from the time it ought to have been paid. Would it not be absurd, as well as unjust, that he should be obliged to pay the whole mortgage, if only one penny should be wanting to pay the debts and specified pecuniary legacies, and yet that he should not be liable to pay any part of it, in favor of the residuary legatees, had there been that penny to pay the pecuniary legacies?

Should it be said, that in the adjudged cases on this subject, the heir or devisee has taken the land subject to the whole mortgage money, or has been entirely exonerated out of the personal estate, I repeat my observation in answer, that I find no case in the books similar to that before us. Where there are precedents, it is for the public good, that judges should adhere to them; but where there are none, it is equally incumbent on them to deduce one from general principles, which may reach the substantial justice of every similar case.

The court then proceeded to nominate three persons to audit the accounts of the executors of Job Ruston, and settle the balance due to them, (if any,) on payment of the debts and ascertain pecuniary legacies under the will.